IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| T-MOBILE NORTHEAST LLC, successor-in-interest to Omnipoint Facilities Network 2, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>2080 GC LLC,<br><br>Defendant, | Civil Action No. 18-cv-3535<br><br>**COMPLAINT** |

Plaintiff T-Mobile Northeast LLC, successor-in-interest to Omnipoint Facilities Network 2, LLC ("T-Mobile"), by its attorneys, Porzio, Bromberg & Newman, P.C., as and for its Complaint, states as follows:

## INTRODUCTION

1. Plaintiff T-Mobile, as lessee, entered into a lease agreement in April 2005 (the "Lease") covering certain real property located at 2080 Grand Concourse in the Bronx, New York ("Property"). Upon information and belief, as of August 2013, defendant 2080 GC has been the lessor and owner of the Property, and Chestnut Holdings of New York, Inc. ("Chestnut") has been the manager of the Property.

2. The Lease expressly permits T-Mobile to use and occupy portions of the rooftop of 2080 GC's building (the "Premises") located on the Property to install, operate and maintain a cellular wireless facility that consists of various telecommunications equipment, including, but not limited to, radio transmitting and receiving antennas, radio equipment cabinets and related cables and utility lines (collectively "Antenna Facilities"). The Antenna Facilities are used, and have been used at the Premises since 2005, to support T-Mobile's wireless telecommunications

network, which provides wireless cellular coverage in the vicinity of the Property, including voice transmissions and electronic data service for T-Mobile customers, emergency first responders and anyone attempting to access Enhanced 911("e911") services.

3. Because technology is constantly changing in the telecommunications industry, replacements and updates to T-Mobile's Antenna Facilities are routinely required. Accordingly, T-Mobile expressly provided for such rights in its Lease. Specifically, the Lease grants T-Mobile the right to access the Premises 24-hours a day, 7-days per week, for purposes of maintaining, operating, replacing, altering, enhancing, and/or improving its Antenna Facilities.

4. T-Mobile currently seeks to replace and upgrade three of its nine existing antennas, and to install other minor associated equipment, all within T-Mobile's existing leased Premises.

5. These replacements and upgrades are necessary and essential for T-Mobile to increase capacity and speed, and ensure coverage in and around the Property in order to meet the ever-growing voice and data demands of its customers, the public, and emergency services personnel who rely on T-Mobile's wireless network. The upgrades are also necessary to handle the increasing volume of 4G/LTE data and voice traffic that is being transmitted and received at this site. The inability to complete these improvements may result in increased dropped calls, degraded wireless service, and interference with emergency 911 services.

6. T-Mobile has repeatedly sought access to the Premises to perform its necessary upgrades, and has requested that 2080 GC execute permit applications that T-Mobile must submit to the New York City Department of Buildings ("DOB") for portions of the upgrade work. 2080 GC is violating the express terms of the Lease by refusing to sign the permit

applications and denying T-Mobile access to perform its necessary equipment upgrades. 2080 GC has not articulated a single reason for denying the requested upgrades.

7. As a result of 2080 GC's failure to honor the terms of the Lease, T-Mobile requires a decree of specific performance compelling 2080 GC to sign the necessary permit applications and grant T-Mobile prompt access to the Premises for the purpose of upgrading the Antenna Facilities.

## PARTIES

8. Plaintiff T-Mobile Northeast LLC, successor-in-interest to Omnipoint Facilities Network 2, LLC ("T-Mobile"), is in the business of leasing, installing, operating and/or maintaining wireless telecommunications equipment necessary to provide cellular telephone service. T-Mobile is a wholly-owned subsidiary of T-Mobile USA, Inc. ("T-Mobile USA"), a provider of cellular telecommunications services in the United States.

9. Upon information and belief, defendant 2080 GC is a New York limited liability company and owner of the building located at 2080 Grand Concourse in the Bronx, New York.

## JURISDICTION AND VENUE

10. Plaintiff T-Mobile is a Delaware limited liability company. The sole member of T-Mobile is T-Mobile USA, a citizen of the State of Delaware with its principal place of business in Bellevue, Washington.

11. Upon information and belief, 2080 GC is a single member New York limited liability company whose member is Jonathan Weiner, a citizen of the State of New York.

12. The matter in controversy concerns a dispute, the subject matter of which is in excess of $75,000, exclusive of interest and costs.

3920070

13. This Court has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. §1332(a)(1) (diversity of citizenship).

14. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391 in that jurisdiction is founded solely on diversity of citizenship. Further, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and the property that is the subject of this action is situated in this judicial district.

## BACKGROUND

15. T-Mobile provides wireless service to customers through a network of antennas mounted on towers, buildings, or other structures - - often referred to as wireless facilities or Antenna Facilities - - that broadcast signals to and from customers' wireless phones and other devices. The Antenna Facilities are also physically connected to telecommunications switching facilities, typically by copper wires, T-1 lines, and/or fiber optic cables, called "backhaul." Communications to and from users of a device are transmitted wirelessly to the nearest Antenna Facility, and then by backhaul to a switching facility where they are routed to either complete the voice call or data request.

16. T-Mobile's Antenna Facilities enable T-Mobile USA to broadcast signals over frequencies licensed by the Federal Communications Commission ("FCC") to provide wireless cellular service to thousands of customers in the vicinity of the Property. Additionally, as required by the FCC, T-Mobile's wireless facilities allow the public to access e911 services in the event of an emergency, and permit emergency service first responders to communicate in the performance of life-saving activities. T-Mobile's nationwide network also provides GPS services to municipal emergency personnel, and supports local and national law enforcement agencies.

3920070

17. T-Mobile selects the location of its Antenna Facilities based upon the needs of its wireless network. When a gap in coverage exists or the network is experiencing capacity issues, T-Mobile builds additional sites, and/or upgrades existing sites, to try to avoid dropped calls or slow data connections.

## TERMS OF THE LEASE

18. On or about April 8, 2005, T-Mobile and a company known as New Victoria LLC entered into a Rooftop Lease (i.e., the "Lease") that expressly grants T-Mobile the right to install, operate and maintain a wireless communications facility on the roof of the building located at 2080 Grand Concourse, Bronx, New York. (See Lease at ¶¶ 1(a) and 3, a true copy of which is attached hereto as **Ex. A**.)

19. The Lease enables T-Mobile to provide wireless coverage in and around the Property, to eliminate any gaps in coverage.

20. The Lease provides that the space leased to T-Mobile (i.e., the "Premises") must be "sufficient" for the placement and operation of T-Mobile's wireless communications facility, and that the Premises is generally depicted in Exhibit B to the Lease. (Id., ¶ 1[c], and Ex. B).

21. The Lease states that T-Mobile may use the Premises as follows:

> The Premises may be used by [T-Mobile] for the transmission and reception of radio communication signals and for the construction, installation, operation, maintenance, repair, removal or **replacement** of related facilities, including, without limitation, tower and base, antennas, microwave dishes, equipment shelters and/or cabinets and related activities.

[Id., ¶ 3] (emphasis added). It further provides that "Landlord agrees to cooperate with [T-Mobile] in obtaining, at [T-Mobile's] expense, all licenses and permits or authorizations required for [T-Mobile's] use of the Premises from all applicable governmental and/or regulatory entities." [Id., ¶ 1(b)].

3920070

22. The Lease expressly grants T-Mobile the right to replace, expand and upgrade its Antenna Facilities at any time during the Lease term, and to install any "facilities" necessary to operate its communications system. As Paragraph 7(a) of the Lease states:

> [T-Mobile] shall have the right, at its expense, to erect and maintain on the Premises improvements, personal property and facilities necessary to operate its communications system, including, without limitation, radio transmitting and receiving antennas, microwave dishes, tower and base, equipment shelters and/or cabinets and related cables and utility lines … (collectively the "Antenna Facilities"). [T-Mobile] shall have the right to **alter, replace, expand, enhance or upgrade** the Antenna Facilities at any time during the term of this Lease.

[Id., ¶ 7(a)] (emphasis added).

23. The Lease does not permit the Landlord to charge T-Mobile any additional rent, fees, or monetary penalties for improving, replacing or upgrading its Antenna Facilities during the Lease term.

24. The Lease provides that T-Mobile shall operate its wireless facility for a term of five (5) years, and that T-Mobile has the right to extend and renew the Lease for four additional five-year periods (i.e., renewal terms), subject to the same terms and conditions set forth in the Lease (and subject to a 10% rent escalation each renewal term). The Lease automatically renews at the end of each term. (Id., ¶¶ 2, 5).

25. The parties are currently in a renewal term, and have approximately twelve (12) years remaining on the Lease.

26. The Lease provides that "[T-Mobile] shall have 24-hours-a-day, 7-days-a-week access to the Premises at all times during the Initial Term of this Lease and any Renewal Term." (Lease, ¶ 7(f)).

27. T-Mobile has consistently paid its monthly rent, which is currently $1,511.29, and is current on all of its obligations under the Lease.

3920070

## 2080 GC's BREACH OF THE LEASE

28.   T-Mobile's Antenna Facilities are uniquely situated on the Premises to provide wireless services to customers of T-Mobile USA (T-Mobile's parent company). The Antenna Facilities also provide wireless service to first responders and emergency services personnel and anyone with a cell phone attempting to access e911 services in the vicinity of the Property.

29. T-Mobile's ability to access the Premises to replace and enhance its equipment is critical in allowing T-Mobile to provide the highest quality service to its millions of wireless customers, and meeting its obligation to the community by supporting emergency 911 call traffic in the surrounding area.

30.   T-Mobile installed its Antenna Facilities on the Premises in 2005.

31.   Upon information and belief, 2080 GC purchased the Property at issue in or about August 2013, and thereby became the owner and lessor of the Property subject to the existing Lease with T-Mobile.

32.   Upon information and belief, at all times since 2080 GC became the Property owner, the Property has been managed by Chestnut, and Chestnut has been, and still is, an agent of 2080 GC.

33.   T-Mobile's Antenna Facilities at the Premises currently include nine (9) antennas [three sectors of three antennas per sector], three (3) radio equipment cabinets, nine (9) Remote Radio Units (RRUs), three (3) tower mounted amplifiers (TMAs), and twenty-four (24) lines of coax cables that are housed inside "cable trays."  The Antenna Facilities are critical and necessary to facilitate and ensure consistent, reliable and seamless transmission of T-Mobile's wireless services in and around the Property.  Notably, the Lease expressly permits T-Mobile to

install twelve antennas at the Premises, but T-Mobile is currently only using nine antennas. (*See* drawing LE-1 of Ex. B, attached to the Lease).

34. The Antenna Facilities are presently connected to T-Mobile's infrastructure network via telecommunication backhaul utility lines that carry voice and data transmissions between the Premises and T-Mobile's local switching facilities. Thus, when a customer uses a wireless handset device, the device accesses the closest antenna facility wirelessly. Then, for voice calls and texts, the transmission is sent from the Antenna Facilities via backhaul to T-Mobile's nearest switch, where it is routed, again by backhaul, to the wireless facility closest to the person being contacted. The communication is then completed wirelessly to the person being contacted. For data, the transmission is similarly sent by backhaul from the Antenna Facilities to the nearest switch where it is routed to the target server (e.g., website, email server, etc.).

35. The quality of the antennas that receive and transmit wireless signals, and the associated radio equipment and transmission lines, are therefore of critical importance, both for the party initiating the communication and the party on the receiving end. This requires continuous monitoring and routine upgrading of the antennas and equipment with the latest technology.

36. Public demand for wireless services, in particular wireless data services, has increased significantly over the past few years, and demand is expected to increase in the future. To keep up, telecommunications companies, such as T-Mobile, must routinely update their equipment. This should not be a surprise to 2080 GC as the Lease expressly grants T-Mobile the right to replace, upgrade and enhance its antennas and other equipment at any time during the term of the Lease.

37. In addition to general increased demand for wireless services, T-Mobile's customer base has grown over the past few years. This has resulted in increased usage at the site. Due to the increases in amount of data and frequency of voice calls passing through the Antenna Facilities, and the surge in 4G/LTE data and voice traffic, T-Mobile needs to upgrade its Antenna Facilities to provide greater capacity, and to maintain and provide consistent, reliable and seamless network coverage. T-Mobile's current equipment is not capable of transmitting the increasing 4G/LTE traffic that is passing through the site.

38. As a result, T-Mobile has contacted Chestnut (2080 GC's property manager and agent) numerous times over the past year and advised that T-Mobile needs to perform the following upgrades to its Antenna Facilities at the Premises: (a) Replace three (3) existing antennas with three new antennas of similar size and shape, and (b) install three (3) remote radio units (RRUs) (collectively, "Upgrade Work").

39. The Upgrade Work will help to: (a) Expand and enhance the wireless coverage area that the Antenna Facilities are currently able to handle; (b) increase the capacity of voice and data signals that the Antenna Facilities can currently handle; and, (c) improve the quality and speed at which the voice and data signals are transmitted. All of this serves the important purpose of providing T-Mobile's customers with seamless, reliable and uninterrupted wireless service.

40. The RRUs -- small radio devices that work to amplify and increase the quality of the existing radio signals – will provide support to handle the growing volume of voice and data traffic that pass through the site, while at the same time lowering the risk of dropped calls.

41. T-Mobile's Upgrade Work will <u>not</u> result in T-Mobile occupying additional space beyond the Premises as it is defined and depicted in the Lease (including Exhibit B to Lease).

42. On multiple occasions, T-Mobile has provided Chestnut with (1) a set of construction drawings detailing the Upgrade Work and (2) permit applications that need to be signed by the Property owner, and submitted to the DOB, in order for the Upgrade Work to proceed.  T-Mobile most recently sent these items to 2080 GC and Chestnut on June 19, 2017.

43. On September 14, 2017, T-Mobile sent a letter to 2080 GC demanding that it sign the permit applications and allow T-Mobile to proceed forward with its Upgrade Work.

44. However, 2080 GC has refused to sign the necessary permit applications and is denying T-Mobile access to the Premises to perform the Upgrade Work.

45. Upon information and belief, 2080 GC is attempting to capitalize on T-Mobile's upgrade needs and denying access in order to squeeze T-Mobile into paying an increase in rent.

46. Chestnut and 2080 GC have not presented any justifiable basis for unilaterally denying T-Mobile access to perform the Upgrade Work, which is expressly permitted under the Lease.

47. Without the necessary upgrades, T-Mobile will not be able to adequately transmit the increasing volume of voice and data signals for its customers, a service for which its customers pay for and rely upon.

48. T-Mobile's customers rely upon the fact that they will be able to freely communicate and access voice and data 24-hours a day.  If T-Mobile's equipment reaches capacity without the needed upgrades, the network equipment will be insufficient to meet the increased traffic demands, and T-Mobile's customers may experience interrupted service and dropped calls.  And, without increased capacity to handle the 4G/LTE wireless traffic, a significant number of customers could experience slower or failed data transmissions and video streaming.  This would result in incalculable damage to T-Mobile's goodwill and reputation,

which it has worked hard to develop over the last several years.  Inevitably, T-Mobile may quickly lose current and prospective customers because the telecommunications industry is fiercely competitive and constantly evolving with new technologies and advances to support customer needs.

49. If the upgrades are not permitted, there will also be degraded wireless services for anyone (including non-T-Mobile customers) attempting to contact e911 by cell phone in the area serviced by the Antenna Facilities at the Premises.  And, it could impact emergency first responders who may rely upon the fast and efficient transmission of voice and data signals at this site to perform their duties.  This is problematic because the Antenna Facilities at this site handle a large volume of e911 calls.  In fact, between October 2017 and March 2018, the Antenna Facilities received and transmitted 1,006 e911 calls.

50. T-Mobile enters into building leases like the one at issue knowing that as technology changes and advances, the very upgrade work now sought will one day be needed. That is precisely why T-Mobile bargained for Paragraph 7 in the Lease, which expressly allows for the replacement, upgrade and enhancement of T-Mobile's Antenna Facilities at any time during the term of the Lease, without payment of any extra fees.  (See Lease, ¶ 7[a]).

51. 2080 GC's conduct constitutes a violation of the express terms of the Lease.

## COUNT ONE
**(Specific Performance)**

52. T-Mobile repeats each and every allegation aforementioned as if set forth at length herein.

53. T-Mobile has an existing contract (the Lease) with Landlord 2080 GC, the actual terms of which are clear and unambiguous.

54. T-Mobile is ready and willing to perform its obligations under the Lease, and in fact has fully performed its obligations under the Lease.

55. Under the Lease, T-Mobile and its representatives and agents have the express right to access the Premises for the purpose of replacing, upgrading and enhancing the equipment that comprise its Antenna Facilities, which includes antennas, radio equipment, RRUs and other associated equipment.

56. 2080 GC's refusal to allow T-Mobile and its representatives to access the Premises to replace, enhance and upgrade its Antenna Facilities on the Premises is a violation of the Lease.

57. The remedy of specific performance will require 2080 GC to honor its contractual obligations under the Lease, which it voluntarily entered into. Given the clear and unambiguous language of the Lease, specific performance poses no undue, disproportionate, or inequitable burden upon 2080 GC.

58. Money damages are an inadequate remedy in light of the unique nature of the real property and the services that the Antenna Facilities on the Premises provide.

59. By reason of the foregoing, plaintiff, T-Mobile, demands a decree against the defendant, 2080 GC, in the form of specific performance of the Lease, enforcing the Lease terms, and particularly, (a) granting T-Mobile access to the Premises so it can perform the Upgrade Work, and (2) ordering 2080 GC to execute any permit applications or other documentation that are necessary in connection with the Upgrade Work.

## COUNT TWO
**(Breach of Contract)**

60. T-Mobile repeats each and every allegation aforementioned as if set forth at length herein.

61. T-Mobile and 2080 GC entered into a binding agreement, the terms of which are contained in the Lease.

62. T-Mobile has fully complied with all of its obligations under the parties' agreement.

63. Defendant 2080 GC has and continues to breach its agreement with T-Mobile by denying T-Mobile access to the Premises for the purposes of replacing certain equipment and enhancing its Antenna Facilities which is critical for T-Mobile to meet its customers' increasing wireless needs.

64. By reason of the foregoing, T-Mobile has been damaged and is entitled to all compensatory and consequential damages in an amount to be determined at trial, plus interest thereon.

## COUNT THREE
### (Declaratory Judgment)

65. T-Mobile repeats each and every allegation aforementioned as if set forth at length herein.

66. The express provisions of the parties' Lease require 2080 GC to permit T-Mobile to access the Premises to replace, enhance, and improve its Antenna Facilities. This includes the replacement and upgrading of antennas, and the installation of RRUs.

67. Despite T-Mobile's requests, 2080 GC (through its agent, Chestnut) has unjustifiably denied T-Mobile access to its leased Premises to perform its requested Upgrade Work.

68. Accordingly, there exists an actual controversy of a justiciable issue between T-Mobile and 2080 GC within the jurisdiction of this Court, involving the rights and obligations of the parties under the Lease.

69. Antagonistic claims are present between the parties with respect to whether or not T-Mobile is entitled to unimpeded access to replace, enhance, and improve its Antenna Facilities.

70. By reason of the foregoing, T-Mobile seeks a declaration that the Lease requires 2080 GC to permit T-Mobile, its representatives and agents, unimpeded access to the Premises to replace, enhance and improve its Antenna Facilities, which includes the replacement of three antennas, and the installation of three RRUs, and that by denying such access, 2080 GC has breached the Lease.

## COUNT FOUR
### (Recovery of Legal Fees)

71. T-Mobile repeats each and every allegation aforementioned as if set forth at length herein.

72. The Lease states that the substantially prevailing party in any litigation arising hereunder shall be entitled to its reasonable attorneys' fees and court costs, including appeals, if any. (See Lease, ¶ 18(a)).

73. Under the Lease, T-Mobile is entitled to recover all legal fees incurred by reason of 2080 GC's breach of contract.

74. Accordingly, T-Mobile is entitled to judgment in an amount to be determined for all reasonable legal fees and costs incurred.

**WHEREFORE**, plaintiff T-Mobile demands judgment against defendant 2080 GC, as follows:

    (a) On the First Cause of Action, compelling Defendant to perform all obligations under the Lease;

    (b) On the Second Cause of Action, awarding T-Mobile compensatory and consequential damages in an exact amount to be determined at trial;

3920070

(c) On the Third Cause of Action, a declaration that the Lease requires Defendant to permit T-Mobile and its representatives and agents to have unimpeded access to the Premises to replace, enhance and improve its Antenna Facilities, which includes the replacement of antennas and the installation of three RRUs, and that by denying such access, Defendant has breached the Lease;

(d) On the Fourth Cause of Action, granting T-Mobile reasonable attorneys' fees, costs and disbursements; and,

(e) Granting T-Mobile such other and further relief as deemed just and proper.

Dated: New York, New York
April 20, 2018

**PORZIO, BROMBERG & NEWMAN, P.C.**

By:   s/Joshua H. Abramson
        Joshua H. Abramson
        Gary M. Fellner
156 West 56th Street, Suite 803
New York, NY 10019
(212) 265-6888
*Attorneys for Plaintiff T-Mobile Northeast LLC*

3920070